**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **MELISSA WELLS**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DAVIS OIL CO.**, a Michigan corporation, and **C-STORES, INC.**, a Michigan corporation,<br><br>Defendants. | CIVIL ACTION<br><br>No.:<br>Hon. |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Melissa Wells ("Plaintiff" or "Wells"), hereby brings this Collective and Class Action Complaint against Defendants, Davis Oil Co. and C-Stores, Inc. (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.  This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* state contract laws, and common law claims of unjust enrichment.

2.  Defendants are marketers of quality petroleum, food and grocery products and related goods and services, owning and operating 21 gas station and convenience store locations (referred to by Defendants as "retail outlets") seeded across west Michigan.[1]

---

[1] *See* http://www.davisoil.net/ (last visited Mar. 25, 2022); *see also* http://www.davisoil.net/locations.html (last visited Mar. 25, 2022).

3. Defendants' stated mission is to bring their customers "the best every day" and they "strive to be a feel-good place to work, fuel up and shop".[2]

4. In order to provide the aforementioned service, Defendants employ hourly employees, including but not limited to Assistant Managers, Sales Associates, Cashiers, etc.

5. Defendants' classified their hourly employees as non-exempt and tasked them with the primary job duties of providing outstanding service to Defendants' customers, maintaining a clean and safe environment, promoting merchandising and marketing programs, and handling cash and fuel transactions.

6. Defendants violated the FLSA by knowingly suffering or permitting Plaintiff and other hourly employees to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of 1.5 times the regular rate.

7. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, and a judgment awarding her unpaid back wages, liquidated damages, and attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

8. At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendants at any time in the past three years.

---

[2] *See* http://www.davisoil.net/career.html (last visited Mar. 25, 2022).

**JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

10. Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

11. Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' hourly employees engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

12. The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

13. The Court has personal jurisdiction over Defendants because Defendants conduct business within the state of Michigan, employ individuals within the state of Michigan, are registered with the Michigan Secretary of State, and maintain their principal place of business in the state of Michigan.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants employ hourly employees in this district, conduct business in this district, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

**PARTIES**

15.     Plaintiff Melissa Wells is a resident of Battle Creek, Michigan in Calhoun County, and worked for Defendants as an hourly, non-exempt Assistant Manager in Battle Creek, Michigan from approximately February 4, 2022 until approximately March 11, 2022. During her employment, Plaintiff Wells worked at two of Defendants' store locations in Battle Creek, Michigan: 1790 W. Dickman Road and 1051 North Avenue. Defendants compensated Plaintiff Wells through the payment of an hourly rate, most recently $16.00 per hour. Plaintiff Wells signed a consent to join this collective action, which is attached as **Exhibit A**.

16.     Additional Opt-In Plaintiffs were or are employed by Defendants as hourly employees during the past three years and their consent forms will also be filed in this case.

17.     Defendant Davis Oil Co. ("Davis Oil") is a Michigan corporation (Identification Number 800023273) with its registered agent for service of process listed as Benjamin Davis, 1265 E. Columbia Ave., Battle Creek, MI 49014.

18.     Defendant C-Stores, Inc. ("C-Stores") is a Michigan corporation (Identification Number 800117444) with its registered agent for service of process listed as Jonathon Davis, 1265 E. Columbia Ave., Battle Creek, MI 49014.

19.     Defendants Davis Oil and C-Stores are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiff in violation of the FLSA.

**GENERAL ALLEGATIONS**

20.     Defendants typically paid their hourly employees at a rate ranging from $10.00 to $19.00 per hour.

21. Defendants' hourly positions are often full-time jobs and typically require employees to work at least eight (8) hours per day, on average five (5) days each week, totaling forty (40) or more hours in a workweek.

22. Throughout Plaintiff's employment with Defendants, Plaintiff often worked more than forty (40) hours in a workweek.

23. Prior to hiring, Defendants provide prospective hourly employees with a written offer setting forth the job requirements and an offered rate of pay.

24. Defendants maintain documents demonstrating the promised hourly wage for each hourly employee, including, but not limited to: offer letters, paystubs, and/or other payroll records.

25. Plaintiff received such an offer from Defendants to work as an hourly employee, and she accepted Defendants' offer with the understanding that her base hourly rate would be paid for all hours worked.

26. Plaintiff performed under her agreement with Defendants by carrying out her job duties and responsibilities. More specifically, Plaintiff provided excellent service to Defendants' customers; oversaw and provided customer service leadership, training and coaching for all store employees; maintained a clean and safe environment; assisted with implementing merchandising and marketing programs; and handled cash and fuel transactions.

27. Defendants provided training to hourly employees on, *inter alia*, how to carry out their day-to-day job responsibilities, how to track their time, schedule and attendance expectations, and Defendants' policies. The training that all of Defendants' hourly employees received was substantially, if not entirely, the same.

28. Plaintiff and other hourly employees were trained to clock in and out using Defendants' timekeeping system.

29. Defendants' established workweek for payroll purposes was Monday through Sunday.

30. For each of their twenty-one (21) store locations, Defendants posted weekly work schedules containing hourly employees' scheduled shifts.

31. Plaintiff and other hourly employees were instructed to know the schedules and to be ready for work before the start of their shifts.

32. Defendants instructed and trained Plaintiff and other hourly employees not to clock in until five (5) minutes before their shift was to start.

33. Defendants instructed and trained Plaintiff and other hourly employees to enter their hours worked in the timekeeping system at the end of each shift.

34. At the end of each workweek, Defendants' managers compared their hourly employees' clock-in and out times with the hours reflected on the posted work schedules, and wrote the timekeeping system's daily clock-in/out times on the posted work schedules. *See e.g.*, **Exhibit B**, Wells Work Schedule. Defendants' managers then retroactively modified the hourly employees' time in the computer timekeeping system to match their scheduled shift times or otherwise reduce the amount of their work time (hereinafter referred to as Defendants' "Timecard Shaving Practice").

35. Defendants' Timecard Shaving Practice occurred throughout Plaintiff's employment with Defendants. Upon information and belief, Defendants' utilized this practice for many years.

36. An example of a specific workweek in which Defendants failed to pay Plaintiff Wells all overtime due for hours worked in excess of forty (40) hours includes the following:

**Plaintiff Melissa Wells**
**Workweek of 2/21/22 – 02/27/22**

a. Plaintiff recorded and worked 44.25 hours during this workweek.

b. Defendants' managers shaved 0.25 hours from Plaintiffs' time records at the end of the workweek.

c. Plaintiff refused to sign her timecard and indicated in Defendants' timekeeping system that "My time card is not correct."

d. Nevertheless, Plaintiff was only paid for 44 hours of work.

*See* **Exhibit B**, Weekly Schedule; **Exhibit C**, Wells Timecard; **Exhibit D**, Wells Paystub dated March 3, 2022.  Plaintiff's work schedule, time card, and paystub establish a *prima facie* violation of the FLSA.

37. On several occasions, Plaintiff complained to Defendants that the hours reflected on her time sheets were incorrect; nevertheless, Defendants disallowed and failed to pay a substantial amount of Plaintiff's actual work hours.

38. On March 11, 2022, Plaintiff Wells complained to one of Defendants' managers, Joe Jackson, regarding Defendants' Timecard Shaving Practice.  Plaintiff told Jackson that she was unhappy with the practice and asked why her work time was retroactively changed. Plaintiff and Jackson proceeded to examine Defendants' Timecard Shaving Practice and identified that Defendants did not pay Plaintiff for fifty-two (52) minutes of work in one of her workweeks. Jackson then stated he also had to "check into" two (2) hours of time for Chris (another hourly employee - last name unknown) and indicated that Defendants' Timecard Shaving Practice was the culprit.  Jackson further acknowledged that Defendants' Timecard Shaving Practice "sucks" but it was "the world [they] are in."

7

39. Plaintiff resigned from her employment with Defendants on March 11, 2022.

40. Because Defendants engaged in their Timecard Shaving Practice, the hours maintained in Defendants' computer timekeeping system are inaccurate representations of the total amount of time their hourly employees actually worked. Likewise, the hours reflected on the hourly employees' paystubs are also inaccurate representations of the time they actually worked.

41. Defendants failed to compensate Plaintiff and other hourly employees for all hours worked, despite their ability to do so.

42. Defendants knew or should have known that the time spent by Plaintiff and other hourly employees in connection with all work activities were compensable under the law.

## JOINT EMPLOYMENT ALLEGATIONS

43. At all relevant times, Defendants jointly employed Plaintiff and all other hourly employees within the meaning of the FLSA, 29 U.S.C. § 203(d) and M.C.L §408.412.

44. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

45. The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947).

46. Defendants jointly controlled the hiring and firing of hourly employees. Specifically, each Defendant had the authority to hire and fire hourly employees as they saw fit and carried out the hiring and firing of hourly employees on a regular basis.

47. Each Defendant exercised control, input, and responsibility over the rate and method of wage payment for Plaintiff and all other hourly employees.

48. Each Defendant exercised control, input, and responsibility over the training, structure, and conditions of employment for Plaintiff and all other hourly employees.

49. Each Defendant was jointly responsible for the day-to-day supervision of hourly employees in Defendants' stores. Specifically, Defendants were present or monitored the hourly employees' work every day, directed the hourly employees' work, ensured the hourly employees were performing their job duties, and enforced Defendants' employment policies and practices.

50. Each Defendant exercised control, input, and responsibility over the attendance and schedules of hourly employees.

51. Each Defendant provided all of the necessary tools, equipment, and materials used by hourly employees to perform their job duties. Specifically, they provided the cash registers, telephones, and supplies for maintaining a clean and safe environment.

52. Furthermore, upon information and belief, Each Defendant actively kept, updated, and maintained the hourly employees' payroll records, agreements, work policies and procedures, and performance evaluations related to their employment.

53. Defendants jointly provided the customers for hourly employees to assist, as the customers all belonged to Defendants. In other words, at all relevant times the hourly employees service Defendants' customers.

54. Each Defendant's exercise of control, input, and responsibility over the day-to-day job duties, responsibilities, and conditions of employment for Plaintiff and all other hourly employees establishes Defendants as joint employers.

55. Whether employers, or joint employers, each Defendant is nevertheless liable for the violations pleaded in this Complaint.  29 C.F.R. § 791.2(a).

56. The above well-pleaded facts support Plaintiff's standing to sue each and every Defendant named herein as a joint employer and seek damages for the alleged violations under a joint employment theory.  Other defendants may be added to this lawsuit as dictated by additional facts learned through discovery.

## FLSA COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly employees who worked for Defendants at any of its locations at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

58. Excluded from the proposed FLSA Collective are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

59. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

60. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work Plaintiff and the proposed FLSA Collective performed.

61. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

62. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for all hours that they worked in excess of forty (40) hours per workweek; and

   b. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants.

63. Defendants' unlawful conduct has been widespread, repeated, and consistent.

64. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

65. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective

members are 1) required to work without compensation; and 2) entitled to overtime for hours worked over forty (40) in a week.

66. Plaintiff estimates the FLSA Collective, including both current and former hourly employees over the relevant period, includes hundreds of current and former hourly employees. The precise number should be readily available from a review of Defendants' personnel and payroll records.

67. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

### RULE 23 CLASS ALLEGATIONS

68. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly employees who worked for Defendants at any of its locations at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Michigan Class"). Plaintiff reserves the right to amend this definition if necessary.

69. The members of the Rule 23 Michigan Class are so numerous that joinder of all members in this case would be impractical. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, Plaintiff reasonably estimates there are hundreds of Rule 23 Michigan Class members. Rule 23 Michigan Class members should be easy to identify from a review of Defendants' personnel and payroll records.

70. There are questions of law and fact common to the Rule 23 Michigan Class that predominate over any questions solely affecting individual members of the Michigan Class, including but not limited to:

   a. Whether Defendants failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Michigan Class;

   b. Whether Defendants' policy of failing to pay for all time worked was instituted willfully or with reckless disregard of the law;

   c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract;

   d. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants; and

   e. The proper measure of damages sustained by Plaintiff and the Rule 23 Michigan Class.

71. Plaintiff's claims are typical of those of the Rule 23 Michigan Class in that she and all other Rule 23 Michigan Class members suffered damages as a direct and proximate result of the Defendants' Timecard Shaving Practice. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Michigan Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Michigan Class members.

72. Plaintiff will fully and adequately protect the interests of the Rule 23 Michigan Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of Michigan wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Michigan Class.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Michigan Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

74.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.     Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Michigan Class and declaratory relief is appropriate in this case with respect to the Rule 23 Michigan Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201,** *et seq.* **-- FAILURE TO PAY OVERTIME**

77.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

78.     At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

79.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

80.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

81. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

82. Plaintiff and the other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

83. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

84. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

85. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

86. At all relevant times, Defendants engaged in an unlawful policy, practice and scheme of modifying Plaintiff's and other FLSA Collective members' clock-in or clock-out times in order to deny them pay for all hours worked. Defendants' actions in this regarding amount to a violation of their FLSA recordkeeping obligations. 29 U.S.C. § 211(c).

87. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

88. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA

Collective members were deprived of overtime wages in violation of the FLSA.

89.  Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

90.  As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 MICHIGAN CLASS ACTION
## BREACH OF CONTRACT

91.  Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

92.  In order to assert a valid breach of contract claim, a plaintiff must "prove (1) the existence of a contract, (2) the terms of the contract, (3) that the contract was breached, and (4) that he was injured by the breach." *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir. 1999).

93.  At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Michigan Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Michigan Class members performed on Defendants' behalf.

94.  Evidence of these contracts include Defendants' offer letters, pay statements, and other documentary evidence in Defendants' possession.  Additionally, Defendants made verbal offers for payment at a specified wage for their hourly employees' work, which Plaintiff accepted

16

and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Class members the promised wages.

95. For example, Defendants offered to compensate Plaintiff at a minimum of $19.00 per hour if she agreed to perform services for Defendants as an hourly employee. Plaintiff accepted Defendants' offer and performed her job duties in reliance on the offer.

96. Each Rule 23 Michigan Class member, including Plaintiff, was contractually entitled to their promised hourly rate within the applicable period.

97. Plaintiff and every other Rule 23 Michigan Class member accepted the terms of Defendants' offers and performed under the contracts by doing their jobs and carrying out the work they performed each shift.

98. By not paying Plaintiff and every other Rule 23 Michigan Class member the at their fixed, pre-agreed upon hourly wage for *all* work they performed each shift, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Michigan Class.

99. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Michigan Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Michigan Class member.

100. Plaintiff and the Rule 23 Michigan Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims).

101. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Michigan Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 MICHIGAN CLASS ACTION
## UNJUST ENRICHMENT

102. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

103. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

104. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Michigan Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Michigan Class members performed for Defendants' benefit.

105. Plaintiff and every other Rule 23 Michigan Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

106. By not paying Plaintiff and every other Rule 23 Michigan Class member the agreed upon hourly wage for *all* hours worked each shift, Defendants were unjustly enriched.

107. Plaintiff and the Rule 23 Michigan Class members performed all work tasks at the request of, and without objection by, Defendants.

108. Defendants received and accepted the above-referenced work services from Plaintiff and every other Rule 23 Michigan Class member and enjoyed the benefits derived therefrom.

109. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Michigan Class member to finance their various business ventures or pay their equity owners.

110. Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Michigan Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Michigan Class for the same.

111. Plaintiff and the Rule 23 Michigan Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Michigan Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

112. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Michigan Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Michigan Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Michigan Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e. An Order designating Plaintiff Wells as the representative of the FLSA Collective and the Rule 23 Michigan Class, and undersigned counsel as class counsel for the same;

f. An Order declaring Defendants violated the FLSA;

g. An Order declaring Defendants' violations of the FLSA were willful;

h. An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Michigan Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i. An Order declaring Defendants were unjustly enriched by the off-the-clock work they required Plaintiff and the members of the Rule 23 Michigan Class to perform;

j. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective and the Rule 23 Michigan Class the full amount of damages and liquidated damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Melissa Wells, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: March 25, 2022					Respectfully Submitted,

/s/ Jesse L. Young
Jesse L. Young (P72614)
Alana A. Karbal (P82908)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jyoung@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff, the FLSA Collective, and the putative Rule 23 Class*